IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DARRELL J. MICKELL,    #302230, ) | Civil Action No. 3:08-2973-RBH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JON OZMINT, DIRECTOR; ) | |
| JAMES SLIGH, JR.; ) | |
| ANTHONY PADULA, WARDEN; ) | |
| BRUCE OBERMAN, S.M.U. ADMINISTRATOR; ) | **REPORT AND RECOMMENDATION** |
| MRS. C. JAMES, INMATE GRIEVANCE ) | |
| WORKER; ) | |
| SHARON PATTERSON, DISCIPLINARY ) | |
| HEARING OFFICER; ) | |
| ANGELA BROWN, DISCIPLINARY HEARING ) | |
| OFFICER; AND ) | |
| MS. BELL, ASSOC. WARDEN, ) | |
| ALL IN OFFICIAL AND INDIVIDUAL ) | |
| CAPACITIES, ) | |
| ) | |
| Defendants ) | |
| ) | |
| _____ ) | |

Plaintiff filed this action on August 27, 2008.[1] He is an inmate at the Lee Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC"). On January 12, 2009, Defendants filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on January 13, 2009 pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on February 5, 2009.

## MOTION FOR DEFAULT JUDGMENT

On October 24, 2008, Plaintiff filed a motion for default judgment. He argues that default should be entered because Defendants did not file an answer within twenty days of being served with the summons and complaint as required by the Federal Rules. See Fed. R. Civ. P. 12. Defendants contend that Plaintiff's motion should be denied as their answer was filed prior to Plaintiff filing the request for entry of default and because Plaintiff was not unduly prejudiced by Defendants' filing of an answer two days after the expiration of the time allowed by the Federal Rules.[2] Plaintiff filed a reply in which he argues that Defendants have no meritorious defenses and they have not shown excusable neglect for filing their answer late.

The clear policy of the Federal Rules of Civil Procedure is to discourage judgment by default and to encourage disposition of claims on their merits. Reizakis v. Loy, 490 F.2d 1132 (4th Cir. 1974) and Tolson v. Hodge, 411 F.2d 123 (4th Cir. 1969). Where, as here, a court is ruling upon a plaintiff's application for a default judgment, it properly treats a defendant's opposition as a motion to set aside the entry of a default, which is assessed under the good cause standard of Rule 55. See, e.g., Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981); Federal Deposit Ins. Corp. v. Danzig, 10 F.3d 806, 1993 WL 478842 (4th Cir. 1993)[Table]. The primary factors relied on by the court when considering a motion to set aside default under Rule 55(c) are prejudice to a non-moving party and whether a meritorious defense is presented. Central Operating Co. v. Utility Workers of Am., AFL-CIO, 491

---

[2]Defendants' counsel filed an affidavit in which he states that he was out of the office from October 8 to 11, 2008 to be with his wife as she underwent a C-section in connection with the birth of their child.

2

F.2d 245 (4th Cir. 1974). A meritorious defense is presented where the moving party makes a presentation or proffer of evidence which, if believed, would permit the court to find for the defaulting party. United States v. Moradi, 673 F.2d 725 (4th Cir. 1982). The court may also consider whether or not the moving party acted promptly, Consolidated Masonry & Fireproof, Inc. v. Wagman Constr. Co., 383 F.2d 249 (4th Cir. 1967), and whether or not the moving party has been disadvantaged by the error or neglect of his attorney. United States v. Moradi, 673 F.2d at 728.

Defendants filed an answer on October 17, 2008 (see Doc. 16), two days after their answer was due (on October 15, 2008). See Docs. 9-15 (indicating that Defendants were served on September 25, 2008). There is no indication that Plaintiff suffered any prejudice by the delay involved. Further, a scheduling order, entered after Defendants filed their answer, allowed the parties adequate time for discovery. Defendants have presented a meritorious defense.[3] Analysis of other factors also weighs in favor of Defendants as it appears that Defendants acted promptly, the only sanction proposed by Plaintiff is default (and no less drastic sanction), and Defendants were disadvantaged by the error of their attorney. It is, therefore, recommended that Plaintiffs' motion for default judgment be denied.

## MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges constitutional violations based on his prison disciplinary hearings and convictions, the grievance process related to the convictions, his medical care, and his conditions of confinement. Defendants contend that they are entitled to summary judgment because:

---

[3]"[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." Moradi, 673 F.2d at 727 (citing Central Operating Co. v. Utililty Workers of Am., 491 F.2d at 252 n. 8).

(1) Defendants are entitled to qualified immunity; (2) Plaintiff's allegations regarding his disciplinary convictions and subsequent grievances do not rise to the level of constitutional violations; (3) Defendants are immune from Plaintiff's claims against them in their official capacities; (4) Plaintiff's medical claims do not rise to the level of deliberate indifference; (5) Plaintiff's claims concerning his conditions of confinement do not rise to the level of constitutional violations; (6) Plaintiff's claim for emotional distress is not actionable under § 1983; and (7) any perceived state claims should be dismissed under the discretion of the court as all federal claims have been demonstrated to be without merit.

    1.    <u>Medical Claims</u>

Plaintiff appears to allege that Defendants were deliberately indifferent to his medical needs. Specifically, he claims that he was scheduled to see a physician, but his appointments were repeatedly cancelled. Defendants contend that Plaintiff fails to show that they were deliberately indifferent to any of his serious medical needs.

In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," <u>Id.</u>, quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
>                        \* \* \* \* \* \* \*
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," <u>Gregg v. Georgia,</u> <u>supra</u>, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of

> how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm

>might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. Plaintiff's records reveal that on at least two occasions Plaintiff requested to see a doctor during his sick call consultation with one of the on-site SCDC nurses. The nurses screened Plaintiff's records and based on his medical condition determined that he did not need a follow-up visit with a physician. Nurse/physician notes, prescription logs, and medication summaries reveal that Plaintiff received medical treatment during the time period at issue. The record reveals that Plaintiff refused his medications on September 23, 2008. He was informed that he would be referred to the physician for screening and the need for followup in the physician's clinic would be determined. See Defendants' Motion for Summary Judgment, Ex. C (Plaintiff's Medical Records).

Plaintiff disagrees with the treatment he has been offered. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional

violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that Defendants' actions or inactions rose to the level of a constitutional violation.

    2.    Disciplinary Hearings

Plaintiff appears to assert claims concerning his disciplinary convictions (for possessing a cell phone and for sexual assault). Defendants contend that Plaintiff's allegations concerning his disciplinary convictions do not rise to the level of a constitutional violation. Specifically, Plaintiff claims that he was wrongfully convicted of the institutional offense of possessing a cellular phone because there was no evidence that he was actually in possession of the cell phone. Defendants contend that sufficient evidence exists because Officer Izell Simon wrote in the incident report that while conducting a cell search he noticed something in Plaintiff's hand, Plaintiff walked into the room and stretched out his arm pretending to be stretching, and then placed his hand on the top bunk (where the phone was found). Plaintiff alleges that the hearing for the sexual assault charge was not timely held. Defendants, however, provide that an extension of time to hold the hearing was approved (in order to secure a disciplinary hearing officer from another institution as DHO Patterson was the charging officer).

Plaintiff's allegations concerning his disciplinary proceedings and the outcome of those proceedings are barred by Heck v. Humphrey, 512 U.S. 477 (1994)[4] and Edwards v. Balisok, 520

---

[4]The Supreme Court, in Heck v. Humphrey, 512 U.S. 477 (1994) determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based.

U.S. 641 (1997)(Heck precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits); see also Kerr v. Orellana, 969 F. Supp. 357 (E.D.Va. 1997)(holding that prisoner's § 1983 claim for monetary damages and injunctive relief related to his disciplinary hearing was precluded under Heck). Plaintiff has not shown he successfully attacked his disciplinary hearing convictions. Plaintiff cannot maintain a § 1983 action, whether for restoration of good time credits, monetary damages, or injunctive relief related to the hearing, if a judgment in his favor would necessarily imply the invalidity of the outcome of the disciplinary proceeding. Here, the awarding of damages and/or injunctive relief to Plaintiff would necessarily imply the invalidity of the outcome of his disciplinary hearing and thus his claim is barred under Heck and Balisok.

Even if Plaintiff's claims are not barred, he fails to show a constitutional violation. A prisoner is entitled to only a minimal standard of due process in the prison disciplinary setting. The following requirements are sufficient to satisfy this minimal standard of due process:

1.   Advance written notice of the charges;

2.   A written statement by the committee, citing the evidence on which they relied and the reasons for the action taken; and

3.   The right by the inmate/defendant to call witnesses and present documentary evidence, if institutional safety will not be jeopardized.

Wolff v. McDonnell, 418 U.S. 539, 563-576 (1974). Due process in prison discipline decisions is satisfied if there is "some" evidence to show that the inmate committed the offense. Hill v. Superintendent, Mass. Corr. Inst., 472 U.S.445, 455 (1985). The "some evidence" standard is a lenient one, requiring no more than a "modicum of evidence," and is met if there is any evidence in the record that could support the board's decision. Id. at 455-56. This standard does not require an

examination of the entire record, or a reweighing of the credibility of witnesses and other evidence. Id.; see also Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990).

Review of the documents submitted by Defendants indicates that Plaintiff received advanced written notice of the charges, was given the opportunity to call witnesses and present documentary evidence, and was given a written statement by the disciplinary officer. Plaintiff signed the Disciplinary Report and Hearing Record ("Hearing Record") form on January 31, 2008 indicating that he received notice of the hearing on the phone charge and did not want his accuser present at the hearing. His hearing was held on February 14, 2008. It was noted that Plaintiff was removed from the sanctioning portion of the hearing for exposing himself to DHO Sharon Patterson. The form provides that Plaintiff was found guilty based on the officer's report and pictures of evidence. See Defendants' Motion for Summary Judgment, Ex. A (Hearing Record, Incident Report, and picture of cell phone). On February 26, 2008, Plaintiff signed a Hearing Record form indicating that he was notified of the hearing and charges (sexual assault charge) and that he did not want to be present at the hearing. The form indicates that Plaintiff refused to report for the hearing and that he was found guilty of the charges based on the officer's report. See Defendants' Motion for Summary Judgment, Ex. A. (Hearing Record, Incident Report, and Hearing Extension form).

    3.    Grievances

Plaintiff appears to allege that Defendants violated his constitutional rights by delaying or improperly processing his grievances. Defendants contend that Plaintiff's claims concerning grievances fail because the constitution does not create an entitlement to a grievance procedure.

9

Plaintiff fails to establish a constitutional claim concerning the grievance system at SCDC. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Even assuming that Defendant violated SCDC grievance procedures, such actions do not state a claim which is actionable under § 1983. See Brown v. Dodson, 863 F. Supp. 284 (W.D.Va. 1994). Further, allegations that Defendants did not follow SCDC policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

4.      Conditions of Confinement

Plaintiff complains about his conditions of confinement in the Special Management Unit ("SMU"). He claims that the SMU was unsanitary with overflowing showers, trash, and bird feces; that the air conditioning ran full blast causing him to be cold; he only received "outside" recreation[5] once in six months; he caught a rash from the conditions requiring him to be prescribed a medication for the rash; he is housed about crisis intervention inmates who are noisy and cause him sleep deprivation; and he was served cold food. Plaintiff also makes claims concerning being forced to wear a pink jumpsuit which was made of thin material such that he was cold and that wearing a pink jumpsuit humiliated, demoralized, and degraded him. Defendants contend that the complained

---

[5]Although Plaintiff appears to complain that he was not allowed to exercise outside, there is no indication that he was not allowed to exercise inside the prison.

10

of conditions do not rise to the level of a constitutional violation and have not cause Plaintiff any physical injury. They also argue that Plaintiff claims of emotional stress from the alleged conditions of confinement or wearing of a pink jumpsuit are not actionable under § 1983.

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency. Rhodes v. Chapman, 452 U.S. 337 (1981). Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949 (1993). The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825 (1994). A plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged conditions to withstand summary judgment on a prison living conditions claim. Strickler, 989 F.2d at 1380-81. Plaintiff fails to establish a constitutional claim because he has not shown any serious or significant physical or emotional injury resulting from the alleged conditions. See Strickler, 989 F.2d at 1380-1381.

Plaintiff alleges that he suffered from nausea and diarrhea as a result of being served cold food. Prisons and detention facilities are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." See French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, Owens v. French, 479 U.S. 817 (1986). Assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents. Divers v. Dep't of Corrs., 921 F.2d 191, 196 (8th Cir. 1990); see also Madyun v. Thompson, 657 F.2d 868, 874-75 (7th Cir. 1981)(allegation that food served to segregated prisoners was cold and not on the menu served to general prison population was insufficient to state an Eighth Amendment violation); Hoitt v. Vitek, 497 F.2d 598, 601 (1st Cir. 1974)(prisoners' allegation of deprivation of hot meals failed to state a claim of cruel and unusual punishment, given the stipulation that three meals were provided daily); Prophete v. Gilless, 869 F. Supp. 537 (W.D. Tenn. 1994)(food which was cold by the time it was served did not constitute cruel and unusual punishment). Although Plaintiff complained to medical personnel about problems from eating cold food, he was consistently found to be in no acute distress, his abdomen was soft and non-tender, and bowel sounds were present in all four quadrants. See Defendants' Motion for Summary Judgment, Ex. C. There is no indication that Plaintiff suffered from any serious physical problems from the food he is served.

Plaintiff alleges that he is forced to wear a pink jumpsuit which humiliates and degrades him. He also claims that this jumpsuit is made of thin fabric that does not provide enough warmth. Plaintiff has not shown any serious physical injury. To the extent that Plaintiff is attempting to assert a claim for mental or emotional injury, his claim fails as there is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability

12

under § 1983 regarding such claims. See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987); and Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989). The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[6]

42 U.S.C. § 1997e(e).

    5.    <u>Immunity</u>

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity

---

[6] The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

13

> [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Thus, Defendants are entitled to Eleventh Amendment immunity from damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), <u>cert.</u> <u>denied</u>, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

      6.     <u>State Law Claims</u>

It is unclear whether Plaintiff is attempting to assert any claims under South Carolina law. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), only his state law claims would remain. Thus it is also recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any remaining state law claims be dismissed.

### **CONCLUSION**

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 36) be **granted** and Plaintiff's motion for default judgment (Doc. 20) be **denied**.

                                                            Joseph R. McCrorey
                                                            United States Magistrate Judge

April 13, 2009
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).